

# FBE&M
ATTORNEYS AT LAW

Delia A. Isvoranu
DIsvoranu@filicebrown.com

July 28, 2008

The Honorable Joseph C. Spero
United States District Court
Northern District of California
450 Golden Gate Avenue,
Courtroom A, 15th Floor
San Francisco, CA  94101

Re:   *Samuel B. Johnson III v. Chevron Corporation, et al.*
      Northern District of California Case No. CV 07-5756 SI (JCS)

Dear Judge Spero:

We are in receipt of Plaintiff Samuel Johnson's July 23, 2008, letter. Although Chevron expressed its intention to prepare a letter to the Court seeking to quash the subpoena issued by Plaintiff upon third-party PG&E for non-party Susan Solger's employment records from that prior employer (i.e., before she was employed by Chevron) Plaintiff instead elected to seek to compel such production. Accordingly, Chevron takes this opportunity to respond.

**Improper and Untimely Service:**

On or about June 26, 2008, during the course of a purported meet and confer regarding other discovery, Plaintiff advised me that he would be serving a subpoena to obtain the employment records of Chevron employee, non-party, Susan Solger from her *prior* employer. At that time, in order to minimize disruption to Chevron's business, I agreed to accept service of the subpoena on Ms. Solger's behalf (as she is a current Chevron employee). My assumption was that Plaintiff would effectuate proper service upon my office such as through personal service or overnight delivery, prior to the issuance of the subpoena. Following this telephonic conference, Plaintiff unilaterally stated that he would serve the subpoena by fax. No written agreement to accept service by fax was ever proposed, agreed to or executed and thus, the requirements of Fed. Rules Civ. Proc., rule5 (b)(2) (E) have not been met. For that reason, immediately upon my receipt of the subpoenas by fax on July 9, 2008, I notified Plaintiff:

> Please be advised that your attempted service of the notice of the subpoenas by
> fax (attached) is improper and ineffective. The Federal Rules allow fax service
> only when the other party has agreed in writing to receive service of the particular

LAKE MERRITT PLAZA  ◆  1999 HARRISON STREET  ◆  SUITE 1800
PO BOX 70850  ◆  OAKLAND, CA 94612-0850  ◆  510.444.3131  FAX: 510.839.7940

ONE CALIFORNIA PLAZA  ◆  300 SO. GRAND AVENUE  ◆  SUITE 1400
LOS ANGELES, CA 90071-3124  ◆  213.687.2666  FAX: 213.687.2660

Re:   *Samuel B. Johnson III v. Chevron Corporation, et al.*
Page 2

# FBE&M

items by fax/email, which I did not do. Accordingly, you will need to properly serve notice of the subpoenas upon our office...

In fact, following review of the fax date/time stamp on Plaintiff's subpoenas, it appears that Plaintiff faxed the subpoenas from his current place of employment as the employer's name appeared on the fax. As a result, it is improbable that Chevron will be able to agree to mutual service by fax as Plaintiff likely will not agree to allow Chevron to serve papers related to this matter through his workplace fax machine.

Following my advising Plaintiff of this improper service, Plaintiff (through First Reprographics) did in fact serve the subpoenas by mail, on July 14, 2008—the very same day the subpoenas were served upon PG&E. Indeed, the subpoenas were not received by our office until two days later, on July 16, 2008, with the requested document production date set for July 24, 2008.

In that regard, Fed. Rules Civ. Proc., rule 45 (b)(1) expressly requires that, if "the subpoena commands the production of documents, electronically stored information, or tangible things...then **before** it is served, a notice must be served on each party." (Emphasis added.) Courts have interpreted "prior notice" to mean "prior to service...a failure to give notice prior to the issuance of subpoenas violates Rule 45(b)(1)...[and] that even though opposing counsel received notice prior to production, this was insufficient to meet the requirements of Rule 45(b)(1)." (*Biocore Medical Technologies, Inc. v. Khosrowshahi* (D.Kan.1998) 181 F.R.D. 660, 667; internal citations omitted.) Here, and for the reasons stated above, in addition to improperly serving the subpoenas by fax, the subsequent mail service and notice of the issuance of the subpoenas was untimely. Accordingly, Chevron served formal notice to PG&E, First Reprographics and Plaintiff of its objections on these bases and its intent to move to quash the subpoena(on behalf of its employee Susan Solger).

**Chevron Never Sought to First Review the Contents of the PG&E Personnel File:**

While I did ask Plaintiff to voluntarily withdraw his subpoena due to his failure to provide proper and timely notice and in light of Ms. Solger's privacy rights, I am entirely unaware of what Plaintiff is referring to when he states that I requested he withdraw the subpoena in order to "allow [me] time to ascertain what was in PG&E's personnel files..." I have never indicated to Plaintiff that I wanted to first determine what was in the files. Indeed, there would be no means for me to do so as PG&E is a third party and I have no access to the personnel file unless, and until, it is produced to First Reprographics—a production which Chevron seeks to prevent. Only then may I request copies of the file and any records. Moreover, Plaintiff's related contention that I have "already obtained the contents of what is in Susan J. Solgers's personnel file and therefore move to quash the subpoena in hopes that Plaintiff Johnson will not ascertain the contents as well" is similarly nonsensical. Neither PG&E nor First Reprographics has produced

Re:   *Samuel B. Johnson III v. Chevron Corporation, et al.*
Page 3

**FBE&M**

any records and I certainly have not received or reviewed the contents of Ms. Solger's prior employer's personnel file.

### Plaintiff's Subpoena is Overbroad, Seeks Irrelevant Records, and Invades Ms. Solger's Rights to Privacy

Ms. Solger is a non-party to this action. Yet, Plaintiff's subpoena over broadly seeks "all" files which "constitute Susan Janet Solger's personnel file" from her former employer, PG&E. Plaintiff has articulated no basis for why he would be entitled to items such as Ms. Solger's payroll information, potential medical records, performance related records, benefits information, leave records, correspondence with others at PG&E, or other such documents also of a confidential nature.

Plaintiff has not sought to discover, as a preliminary matter and through less intrusive means—such as Interrogatories—whether any employee at any time made any complaint against Ms. Soler while she was employed by PG&E and, if so, the basis of any such complaint (i.e. race discrimination of the type alleged by Plaintiff in this case versus a complaint regarding other work related matters). Even assuming, for the sake of argument only as I have not seen the personnel file's contents, that the file contains references to any prior complaint by a PG&E employee against Ms. Solger during the course of her prior employment, Plaintiff has not articulated why such information would be relevant to his claims against Chevron. Any "complaint" against Ms. Solger during her prior employment with non-party PG&E would have no bearing upon what occurred during Plaintiff's less than one-year employment with Chevron. Such prior conduct (assuming there is any basis to believe it occurred) does not establish conduct in conformity therewith years later when Ms. Solger became employed by Chevron and during the brief period of time that she supervised Plaintiff.

A person's valid interest in preserving the confidentiality of sensitive information contained in his personnel files has been recognized in both federal and state statutes and decisional authorities. There is "no abuse of discretion where privacy interests, coupled with the district court's determination to keep the trial focused justifie[s] limiting plaintiff's discovery of personnel files." (*Regan-Touhy v. Walgreen Co.* (10th Cir. 2008) 526 F.3d 641, 649; internal citations omitted.) Federal courts have acknowledged a right to privacy in employment files. (*Kakagawa v. Regents of University of California* (N.D.Cal. 2008) 2008 WL 1808902, at 2.)

Additionally, federal courts may apply state privilege laws, such as California's constitutional right to privacy, where they do not conflict with federal law. (*Soto v. City of Concord* (N.D.Cal.1995) 162 F.R.D. 603, 609.) Under either federal or state law, the Court must balance the party's need for the information against the individual's privacy right in his or her employment files. (*Kakagawa, supra*, 2008 WL 1808902 at p.2.) California right to privacy "is

**FBE&M**

subject to balancing the needs of the litigation with the sensitivity of the information/records sought." (*Davis v. Leal* (E.D.Cal.1999) 43 F.Supp.2d 1102, 1110.)

State law mirrors this heightened balancing test. "The adoption of the constitutional right of privacy emphasizes the duty of the courts to protect both parties and nonparties against unnecessary intrusion into matters which people ordinarily consider to be private." (*Rifkind v. Superior Court* (1981)123 Cal.App.3d 1045, 1052 (disapproved on other grounds).) Even when private information is relevant, disclosure may still be denied. "The ordinary yardstick for discoverability, i.e., that the information sought may lead to relevant evidence, is not applicable when compelled disclosure would intrude on constitutionally protected areas." (*Kahn v. Superior Court* (1987)188 Cal.App.3d 752, 770 [denying disclosure of performance evaluations]; emphasis added.)"[I] it clear…personnel records and employment history are within the scope of the protection provided by the state and federal Constitutions." (San *Diego Trolley, Inc. v. Superior Court* (2001) 87 Cal.App.4th 1083, 1097.) For example, in *Board of Trustees v. Superior Court* (1981)119 Cal.App.3d 516, 528, the court expressly stated, "It is manifest that the subject documents and communications of [the employee's] personnel, tenure, and promotion files, whether relating only to his initial employment, or also to his 'promotion, additional compensation, or termination,'" were protected from the disclosure by the employee's "constitutional right of privacy." (See also, *Kahn, supra,* 188 Cal.App.3d at 770; [denying disclosure of evaluations]; *El Dorado Savings & Loan Assn. v. Superior Court* (1986) 190 Cal.App.3d 342, 347 [denying disclosure of personnel files.].)

Mirroring the scrutiny set forth in federal authorities, California decisions similarly hold that, due to the importance of individuals' privacy rights, it is not enough to show that the matters encompassed by the right of privacy are merely relevant to the issues of ongoing litigation. As a threshold, they must be "directly relevant," and even then, the party seeking disclosure must still establish a "compelling need for this information that outweighs the right to privacy." (*Juarez v. Boy Scouts of America, Inc.* (2000) 81 Cal.App.4th 377, 392.)

Here, Chevron has produced more than 14,000 documents from which Plaintiff can attempt to establish his unfounded claims. Plaintiff failed to make any showing that he is entitled to peruse the personnel files of Ms. Solger or other supervisors or co-workers and, thus, Chevron respectfully requests that this subpoena issued to PG&E be quashed and that Plaintiff also be prohibited from obtaining disclosure of the personnel files (including Chevron's personnel files) of Chevron employees. Plaintiff's lack of evidence and frivolous claims cannot serve as the requisite "compelling need" for disclosure of such private and sensitive information.

Respectfully submitted,

Delia A. Tsvoranu