ROBERT D. EASSA (SBN: 107970)
DELIA A. ISVORANU (SBN: 226750)
FILICE BROWN EASSA & McLEOD LLP
1999 Harrison Street, 18th Floor
Tel: (510) 444-3131
Fax: (510) 839-7940

Attorneys for Defendants
CHEVRON CORPORATION and
CHEVRON ENVIRONMENTAL
MANAGEMENT COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SAMUEL BERNARD JOHNSON III,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CHEVRON CORPORATION. a Delaware corporation and CHEVRON ENVIRONMENTAL MANAGEMENT COMPANY, a California Corporation and DOES 1-10,<br><br>　　　　　Defendants. | Case No. C 07-05756 SI<br><br><br>Date:　　　August 22, 2008<br>Time:　　　9:00 a.m.<br>Courtroom: 10, 19th Floor<br>Judge:　　　Hon. Susan Illston |

**DEFENDANTS CHEVRON CORPORATION'S
AND CHEVRON ENVIRONMENTAL MANAGEMENT COMPANY'S
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S EX PARTE MOTION TO MODIFY**

I.

# INTRODUCTION

In this single plaintiff, non-complex and straightforward case, the Court's civil docket reflects over 100 filings, the vast majority of which consist of frivolous motions and letters filed by Plaintiff Samuel B. Johnson III ("Plaintiff")—employed by Defendant Chevron Environmental Management Company for a little less than one year—all of which have been denied by the Court.

The sole and exclusive basis of Plaintiff's most recent motions, the Ex Parte Motion and Motion to Modify the Court's Pretrial Scheduling Order is his unsupported contention that Defendants Chevron Corporation and Chevron Environmental Management Company (collectively "Chevron") have purportedly "withheld" pertinent discovery. Notably, however, Plaintiff fails to advise this Court that each and every single one of his multiple discovery motions with which he has inundated this Court, seeking to compel the production of documents on this same unfounded basis, have been **denied**. On the other hand, Chevron's single discovery motion—a motion to quash an improper subpoena served by Plaintiff—was granted by the Court. These precludes any argument by Plaintiff that he has been diligent or that he has attempted to cooperate and comply with the Court's Scheduling Order.

Moreover, it is Plaintiff who has stalled the discovery process and he should not be rewarded for this failure through the granting of a modification of the Court's appropriate Scheduling Order.

Accordingly, nothing has occurred in this case—much less any occurrence creating "good cause"—which justifies a continuance of the discovery deadlines, trial date, or any other dates stemming therefrom.

Both Plaintiff's Ex Parte Motion and his Motion to Modify must be denied.

II.

# BRIEF STATEMENT OF PERTINENT FACTS

On May 23, 2008, the parties exchanged Initial Disclosures in this action. With those Disclosures, Chevron produced to Plaintiff (who had been employed by Chevron for a little less

- 1 -

than one year) 2329 documents. (Declaration of Delia A. Isvoranu ("Isvoranu Decl."), ¶2.) Thereafter, on June 27, 2008, Chevron produced another 12,000 documents to Plaintiff, then totaling 14,460 documents. On July 16, 2008, Chevron produced additional documents to Plaintiff, bringing the current total to 14,612. (Isvoranu Decl., ¶3.)

On the other hand, Plaintiff produced no documents to Chevron with his Initial Disclosures and, in response to Chevron's request that he immediately do so, Plaintiff simply stated that he would produce the documents at a later date. Plaintiff failed to produce a single document to Chevron until recently, on July 16, 2008—approximately two months after the parties exchanged Initial Disclosures and although Plaintiff admitted that he had these documents in his possession at the time of the Initial Disclosures. (Isvoranu Decl., ¶¶4 &5.)

Recently, Plaintiff supplemented his Initial Disclosures in order to set forth a damages claim of $8,583,000, premised in part (and placing at issue) the purported emotional distress, social and developmental problems sustained by his two adopted children as a result of Chevron's alleged conduct. Nonetheless, Plaintiff failed to produce all records related to his damages claim (including records from which his children's past developmental issues could be ascertained) and also did not produce his complete wage/earnings information since his employment with Chevron was terminated in 2006. (Isvoranu Decl., ¶¶6 &7, and exhibits thereto.)

Accordingly, Chevron's counsel recently brought to Plaintiff's attention the fact that she was certain Plaintiff had withheld such documents and failed to produce them. Indeed, Plaintiff previously advised that he had additional documents to produce but that he was simply too busy to do so. Plaintiff has refused to provide a date upon which he will produce the additional records, although his deposition has been duly noticed by Chevron for September 2, 2008, in light of the September 29, 2008 currently scheduled mediation. (Isvoranu Decl., ¶8, and exhibits thereto.)

Most recently, on August 9, 2008, Plaintiff advised that he would not be appearing for his deposition as he has not "had an opportunity to prepare," although, presumably, when he filed this action, he was aware of his claims and their basis and thus, there is no legal ground for his refusal to comply with discovery by refusing to appear for deposition on September 2, 2008. It should also be noted that Plaintiff's deposition was noticed after several futile attempts to work

- 2 -

1  cooperatively with Plaintiff wherein defense counsel repeatedly requested a date on which
2  Plaintiff was available and which would be most convenient for him to attend his deposition.
3  Plaintiff never provided a date and never raised any issue with his deposition being scheduled
4  before he could "prepare" for it. Accordingly, and in light of the upcoming September 29, 2008,
5  mediation, Plaintiff's deposition was noticed for September 2, 2008. (Isvoranu Decl., ¶9.)
6      Recently, Chevron's counsel sent Plaintiff an email stating the following:

> With regard to your refusal to appear for your duly noticed deposition, do you have any authority to support your position? As you know, I informed you that 1) we have a right to take your [de]position at any time and 2) there is no requirement that you first conduct all the discovery you want before we can take your deposition. As I stated in our meet and confer today, you filed this action and, therefore, you should know the basis of your claims. It should not be necessary for you to conduct discovery before you can have your deposition taken regarding this matter.
>
> If you have authority, please provide it. Otherwise, as I mentioned in our call, I will have no choice but to file another letter with Judge Spero and will seek sanctions against you for such such [sic] frivolous and uncooperative conduct.

15  (Isvoranu Decl., ¶10, and Exhibits thereto.)
16      In response, and rather than providing any authority for his refusal to be deposed at
17  this time, Plaintiff alarmingly, and nonsensically, accused defense counsel of breaking into
18  Plaintiff's house, as a result of counsel's belief that Plaintiff, as opposed to Chevron, has withheld
19  pertinent documents related to his damages claim: "Your statement regarding the records
20  pertaining to my two children's records implies that you or someone on your behalf has been in
21  my home. Due to such I must inform my superiors as I have confidential materials in my home
22  that should not be revealed to the general public." Such serves as an illustration of the type of
23  unfounded and inflammatory accusations repeatedly asserted by Plaintiff. (Isvoranu Decl., ¶11.)
24      Indeed, although Plaintiff's Motion to Modify asserts that Chevron and its counsel have
25  acted in bad faith, the Court has denied each of Plaintiff's discovery motions in this case.
26  (Isvoranu Decl., ¶12.) On July 10, 2008, Plaintiff filed a seven page "letter brief" (Motion to
27  Compel) with this Court (Document 76) regarding the very discovery upon which his Motion to
28  Modify is based. Chevron opposed that Motion to Compel and, on July 15, 2008, Plaintiff

- 3 -

1  repeated his attempt to persuade this Court by filing a three-page "reply letter." (Document 78.)
2  Days later, on July 23, 2008 (Document 80), Plaintiff filed a similar letter brief, this time seeking
3  to compel the production of records through a subpoena Plaintiff had previously improperly
4  issued, which Chevron had moved to quash. The issues and discovery sought in both Plaintiff's
5  July 10th, 15th, and 23rd letters provided argument and legal authorities (albeit inapplicable and
6  unpersuasive) in each of those letters. (Isvoranu Decl., ¶13.)
7        On July 29, 2008, having reviewed all of the correspondence from Plaintiff and
8  oppositions from Chevron, this Court denied both of Plaintiff's then pending Motions to Compel.
9  (Document 88.) The Court stated that Plaintiff had "set forth no basis that would justify the
10 production" of the records at issue. The Court did not grant Plaintiff's request for further briefing
11 and did not invite further motion work on this issue. Nonetheless, on August 4, 2008, Plaintiff
12 filed a Motion to "Exceed 25-page Limitation" and a 48-page Motion to Compel. (Documents 90
13 and 98, respectively.) Chevron opposed Plaintiff's improper and untimely Motion to Compel
14 (amounting to an improper Motion for Reconsideration and violation of the Court's prior order
15 denying Plaintiff's motions, which did not invite further briefing.) (Isvoranu Decl., ¶¶14, 15, &
16 16.) On August 8, 2008, the Court denied Plaintiff's latest two motions, in its "Order Denying
17 Plaintiffs' Discovery Motions, [Docket Nos. 90, 91, 98]" and also pointed out Plaintiff's violation
18 of the Court's prior Order. (Document 104.)
19       Although Plaintiff's discovery responses contain improper objections and Plaintiff has
20 failed to produce all documents requested in discovery and required by Fed. Rules Civ. Proc., rule
21 26, Chevron, in an effort not to burden this Court, has filed only the successful motion to quash
22 and a single additional discovery motion: a Motion for Protective Order regarding the 512 poorly
23 phrased, overly broad, and improper Requests for Admissions served by Plaintiff. Chevron also
24 will likely have to move to compel Plaintiff's attendance at deposition. Nonetheless, neither of
25 these issues requires a modification of the Court's Scheduling Order—which was discussed at
26 length by the parties prior to the Initial Case Management Conference and with the Court during
27 that conference—as Chevron anticipates that Plaintiff will be compelled to attend his September
28 2, 2008, deposition. (Isvoranu Decl., ¶18.)

Moreover, Chevron has responded to discovery. To date, Plaintiff has served a total of 400 Interrogatories upon Chevron. Chevron has responded to a total of 300 Interrogatories thus far (through objections as they exceed the rule of 25 set forth in Fed. Rules Civ. Proc., rule 33, contained unintelligible and multiple subparts) and, as a gesture of good-faith, is in the process of amending its responses and answering 50 of the Interrogatories although they violate the rule of 25. Chevron agreed to answer certain of the Interrogatories in order to relieve Plaintiff of the need to file yet another letter to the Court, seeking to exceed the 25 interrogatories limit. Chevron has also responded to 70 Requests for Production of Documents and has produced over 14,000 documents to Plaintiff. (Isvoranu Decl., ¶¶19-21.)

As to Requests for Admissions for which a Motion for Protective Order is pending, Plaintiff has served a total of 512 Requests, comprised of 256 upon Chevron Corporation and 256 upon CEMC. To date, Chevron has, collectively, responded to 60 Requests for Admissions (Sets One to each Defendant, containing 30 Requests to each), and has also served Amended responses following meet and confer efforts with Plaintiff. The 30 Requests to each Defendant were unique and not duplicates—in other words, Plaintiff did not serve the same 30 Requests upon Chevron Corporation as he did upon CEMC. Chevron seeks a Protective Order and relief from responding to the remaining 452 Requests. (Isvoranu Decl., ¶¶22-23.)

Regarding that requested Protective Order—the only pending discovery dispute before the Court—Chevron's counsel first attempted to meet and confer with Plaintiff and requested that he limit his RFAs so that Chevron would not file a letter with the Court given that the Requests were "unduly burdensome and harassing given the number served," to which Plaintiff responded: "These rfas are not an attempt to harass [sic] your greedy firm just wants to make money off your clients. This I find repulsive." In response Chevron's counsel advised Plaintiff that responding to the Requests "will be much more expensive for our client than sending a letter to the court. This is one of the reasons we are seeking to limit the RFAs, i.e., to save our client the unwarranted expense." This also is not a basis for granting Plaintiff's request to modify the Scheduling Order as Judge Spero will rule on Chevron's Protective Order this week and, thus, the dispute will be resolved. Moreover, that is an order sought by Chevron, not Plaintiff, and Chevron does not seek

a continuance of the currently scheduled dates in this matter. (Isvoranu Decl., ¶24.)

Accordingly, as Plaintiff's Motions to Compel have been denied, Plaintiff himself has not produced all documents required by Rule 26 and requested in Chevron's Requests for Production of Documents, and no critical discovery disputes are pending before the Court, Plaintiff's Motions should be denied as there is no justification for extending any deadlines in this very simple and straightforward matter.

## III.

## LEGAL ARGUMENTS AND AUTHORITIES

### A. Plaintiff's Motion Is Improper As It Fails To Identify What Portion of the Pretrial Scheduling Order Plaintiff Seeks to Modify

As a threshold deficiency, Plaintiff's Motion fails to identify what aspect of the Court's Scheduling Order Plaintiff seeks to have modified. Plaintiff has not identified the precise dates to be modified nor has Plaintiff requested that the dates be extended/continued to any precise future dates. While Chevron presumes that the requested modification pertains to discovery deadlines and the trial date, Plaintiff has not so stated with any specificity and Chevron is left to wonder whether Plaintiff seeks to modify the Court's Order regarding all discovery, including expert discovery, and whether Plaintiff also seeks to modify the dates related to dispositive motions and other pretrial deadlines. As such, Plaintiff improperly ask this Court to surmise what type and length of extension(s) Plaintiff seeks. His Motion should be denied at the outset on this basis alone.

### B. To The Extent Plaintiff Seeks to Modify the Court's Discovery Deadlines and Trial Date, No Basis Exists for Such a Request, Much Less "Good Cause"

"A scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril'…Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." (*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir.1992); internal citations omitted.) For like reasons present in this case, Plaintiff's Motion to Modify must be denied.

The purpose of a Pretrial Scheduling Order is critical and, for that reason, Chevron has litigated this matter according to that schedule, while Plaintiff has not. As stated in *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607-608 (E.D.Cal.1999):.

> Central to this required showing of diligence is whether the movant discharged her obligation under Rule 16 to collaborate with the district court in managing the case. As Rule 16 recognizes, scheduling orders are at the heart of case management and are intended to alleviate case management problems. **Because good-faith compliance with Rule 16 plays an important role in this process, not only must parties participate from the outset in creating a workable Rule 16 scheduling order but they must also diligently attempt to adhere to that schedule throughout the subsequent course of the litigation.** Indeed, a scheduling order is the critical path chosen by the trial judge and the parties to fulfill the mandate of Rule 1 in "secur[ing] the just, speedy, and inexpensive determination of every action."…Accordingly, to demonstrate diligence under Rule 16's "good cause" standard, the movant may be required to show the following: (1) that she was diligent in assisting the Court in creating a workable Rule 16 order; (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order. (Internal citations omitted,

Here, Plaintiff cannot satisfy any of these diligence requirements and he should not be allowed to gain from his obstreperous conduct. Accordingly, Chevron respectfully requests that the Court deny Plaintiff's Motion.

Prior to the Court's April 24, 2008, Case Management Conference Hearing in this matter, the parties engaged in hours of meet and confer and approximately eight versions of the "Joint Case Management Statement" filed with the Court, which prompted the Court's current Scheduling Order. Thereafter, the Hon. Susan Illston discussed the matters set forth in the Joint Case Management Statement, considered both parties' contentions, and issued the current Scheduling Order. Nothing has occurred since the issuance of that Order requiring its modification and there is no reason why the deadlines set forth therein cannot be met.

The "good cause" standard set forth in Rule 16 considers primarily the conduct of the party seeking modification. "Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." (*Johnson, supra*, 975 F.2d at 610.) The burden is "upon

[the plaintiff] to prosecute his case properly. He cannot blame [defendant] for his failure to do so." (*Id.*) In that regard, the Federal Rules "apply to uncounseled litigants and must be enforced." (*Members v. Paige*, 140 F.3d 699, 702-03 (7th Cir.1998).) This is particularly true in a case such as this when the conduct becomes vexatious as has been the case both through discovery as well as Plaintiff's numerous filings with the Court.

As set for above in the Statement of Pertinent Facts, section II, *supra*, the sole basis of Plaintiff's requested modification (whatever that modification may be) is Chevron's purported "withholding" of documents. However, notably, while Plaintiff has filed three Motions to Compel regarding such documents, all three have been denied, confirming that Chevron has not failed or refused to produce documents. Rather, the denial of the three motions and the granting of Chevron's Motion to Quash evidences that Plaintiff simply has failed to properly conduct discovery. In fact, other than the supposed documents which were the basis of Plaintiff's unsuccessful Motions to Compel, Plaintiff has no identified a single discovery dispute which prevents him from being able to comply with the discovery deadlines and thus, denial of his Motion is warranted. (*Daughtery v. Wilson*, 2008 WL 2338634 at *3 (S.D.Cal.2008).)

It is axiomatic that a moving party, in seeking modification, must show that he has acted with reasonable diligence in attempting to comply with the scheduling order. (*Johnson, supra*, 975 F.2d at 610.) Here, Plaintiff improperly equates the volume and overbreadth of Plaintiff's discovery with "diligence." In reality, Plaintiff has served discovery which is improper, unintelligible and objectionable on various bases (hence, the denial of Plaintiff's Motions to Compel and the granting of Chevron's Motion to Quash.) Such is not akin to "diligence" necessitating modification. Indeed, Plaintiff has not, do date and due to his own election, noticed **a single** deposition although, as the Court is aware, he described in the parties Joint Case Management Statement filed many months ago that he intended to take dozens of depositions. Having failed to do so, he now improperly, and without basis, seeks to have this Court assist him as a result of his lack of diligence by modifying the Scheduling Order. Under the present discovery schedule, Plaintiff still has had and still has sufficient time to comply with all of his discovery obligations (within the scope and limits of the Federal Rules). In fact, even during

- 8 -

1 defense counsel's month-long trial in Riverside (which counsel advised Plaintiff and the Court of
2 at the Case Management Conference) defense counsel communicated with Plaintiff in the
3 afternoons after trial both by email and telephone in order to keep this matter moving forward.
4 Thus, no delay amounting to "good cause" for modification has occurred.

    Moreover, as further noted above, Plaintiff himself has been obstructive of the discovery process, refusing to produce all pertinent documents and, now, refusing to appear for deposition. Such deliberate conduct, in violation of the federal discovery rules, does not serve as a basis for the granting of Plaintiff's request. Rather, it serves as a further reason for its denial.

    Accordingly, there is no reason why the deadlines set forth in the Court's Scheduling Order cannot be met and Plaintiff should not be allowed to benefit from his failure to properly conduct discovery and from his own refusal to comply with his discovery obligations.

Respectfully submitted,

Dated: August 12, 2008

**FILICE BROWN EASSA & MCLEOD LLP**

By: _____
ROBERT D. EASSA
DELIA A. ISVORANU
Attorneys for Defendants
CHEVRON CORPORATION and
CEMC

- 9 -
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S EX PARTE MOTION TO MODIFY
Case No. C 07-05756 SI