FILICE BROWN EASSA & MCLEOD LLP


ATTORNEYS AT LAW

Delia A. Isvoranu
DIsvoranu@filicebrown.com

September 2, 2008

The Honorable Joseph C. Spero
United States District Court-Northern District of California
450 Golden Gate Avenue,
Courtroom A, 15th Floor
San Francisco, CA 94101

Re:   ***Samuel B. Johnson III v. Chevron Corporation, et al.***
      Northern District of California Case No. CV 07-5756 SI (JCS)

Dear Judge Spero:

In response to Plaintiff Samuel B. Johnson's ("Plaintiff") most recent motions filed with the Court via letter brief on August 26, 2008, Chevron hereby opposes Plaintiff's Motions to Quash Chevron's subpoenas to 1) Kaiser Permanente-Psychological Records, 2) California Health and Welfare Agency, 3) Lorin Frank, Ph.D., and 4) Office of the Attorney General.

**Improper and Untimely Notice:**
Plaintiff admits that he was served on August 16, 2008, via U.S. mail, with copies of the at-issue subpoenas. Plaintiff further admits that he subsequently contacted First Reprographics (the subpoena service) and was informed that the subpoenas were issued to the third parties on August 19th and 20th—three days after notice was provided to Plaintiff. Chevron is entirely unsure of why Plaintiff has objected on the basis of "improper and untimely" notice as 1)Plaintiff admits that he was served with notice of the subpoenas by U.S. mail, an authorized method of service pursuant to Fed. Rules Civ. Proc., rule 5(b)(2)(C), and 2) Plaintiff admits that he received three days notice of the subpoenas prior to their issuance. Such objections are an illustration of Plaintiff's unfounded and frivolous contentions throughout his motion-practice.

**Kaiser Permanente-Psychological Records:**
It should be noted that Plaintiff has not objected to the release of his psychiatric records on any privacy or privilege grounds. Rather, he objects only that the records are "outside the scope" of this litigation which presumably means he contends they are not relevant. He is incorrect. In fact, just today, Plaintiff admitted in his deposition that he is simply being uncooperative.

In this action, Plaintiff has alleged a claim for intentional infliction of emotional distress. He seeks over $12,000,000 in compensatory damages arising from his less than one year of employment with Chevron. Among those damages are $1,750,000 for "emotional distress," "physical distress," "mental anguish," and "pain

LAKE MERRITT PLAZA ♦ 1999 HARRISON STREET ♦ SUITE 1800
PO BOX 70850 ♦ OAKLAND, CA 94612-0850 ♦ 510.444.3131 FAX: 510.839.7940

ONE CALIFORNIA PLAZA ♦ 300 SO. GRAND AVENUE ♦ SUITE 1400
LOS ANGELES, CA 90071-3124 ♦ 213.687.2666 FAX: 213.687.2660

and suffering." (*Plaintiff's Second Supplemental Disclosures*, p.3, attached hereto as *Exhibit A*.) Plaintiff has previously provided an authorization in his concurrent Workers' Compensation action for the release of his Kaiser psychiatric records dating back several years (effective for the release of records only in that proceeding). When Plaintiff initially objected to the release of his psychiatric records, the WCAB Judge threatened to dismiss his emotional distress claims if Plaintiff elected not to release the records as Plaintiff could not have it both ways. Plaintiff then authorized the release of those records but now refuses to similarly authorize their release to Chevron in this civil action. Although Plaintiff has been cautioned about this tactic previously, he now seeks to test *this* Court in addition to the WCAB and to once more put Chevron through the same dispute regarding the release of such records. In meeting and conferring with Plaintiff, I explained why Chevron sought records going back to 2000, just five years prior to his employment at Chevron:[1]

> You have claimed emotional distress. The law is clear that you have put your emotional/mental state in issue and thus, we are entitled to find out if your emotional distress was caused by Chevron or whether you had a history of emotional distress/psychological/mental conditions even before you became employed by Chevron. Here is an example: if someone is in a car accident and claims they hurt their back and sues the driver of the car, the driver is entitled to discover whether, in the years prior to the accident, the person already had injured his back previously in order to show that the back pain was a preexisting injury, not caused by the car accident. (*Exhibit B* hereto.)

In response, Plaintiff stated, "I am in agreement...." (*Exhibit B*.) Chevron's position is in line with applicable authorities. "Relevancy is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in a case. Therefore, **as Plaintiff has placed her mental health at issue, Plaintiff's mental health records…are relevant**." (*Barsamian v. City of Kingsburg* (E.D.Cal.2008) 2008 WL 2168996 at *3.) Similarly, in *Manessis v. New York City Dept. of Transp.* (S.D.N.Y.2002) 2002 WL 31115032 at *2, a pro per plaintiff was ordered to release his medical records: Where "a litigant puts his physical or mental condition into issue in the litigation, he waives his right to privacy in any relevant medical records. Here, [plaintiff] has placed his mental condition into issue, by claiming emotional distress damages. Because of this, [plaintiff] may not maintain a claim of privacy in **any mental health records**, and Defendants are entitled to obtain and review such records." (Emphasis added.) Not surprisingly, Plaintiff has not provided a single authority in his letter brief in support of his contrary contentions.

Indeed, Chevron has discovered (through the release of other Kaiser records to which Plaintiff did not object), that Plaintiff *was* suffering from diagnosed depression and had been prescribed Prozac, as early as 2000—five years *before* he became employed by Chevron. Thus, Chevron is in fact informed that Plaintiff *did* suffer from preexisting mental problems, suggesting causation other than Chevron's conduct. Moreover, seeking records dating back only five years was a reasonable limitation placed by Chevron although Chevron likely could have sought psychiatric records dating back even beyond five years. Accordingly, Plaintiff's Motion to Quash related to the release of his psychiatric records must be denied and Plaintiff must be ordered to provide this office with a signed authorization for the release of only the records sought in the subpoena.

**California Health and Welfare Agency and Records of Dr. Lorin Frank:**
*First,* First Reprographics has advised that the proper agency for service was the Health and Welfare Agency, as identified in the subpoena. In any event, Plaintiff has no standing to object on the basis of "wrong entity name" as he is not the individual to whom the subpoena was issued.

---

[1] It should be noted that the subpoena to Kaiser was initially served in June, with a production date of July. Plaintiff never objected. Recently, Kaiser advised that it misplaced the subpoena, thus, it was re-served with the same language and scope as the initial subpoena to which Plaintiff did not object.

*Second*, Plaintiff has knowingly and voluntarily placed his two minor children's education, social skills, behavioral problems, and mental conditions at issue in this case. Plaintiff seeks $3.5 million for supposed emotional, developmental, social and behavioral decline of his children. (*Exhibit A, hereto, ln. 3:21-4:11*.) For the same reasons stated above with regard to Plaintiff's own records, the children's records are also discoverable as Plaintiff has interjected their mental, emotional, developmental and behavioral states in this litigation. As a result, Chevron has the right to discover whether these alleged conditions sustained by Plaintiff's children were caused, as Plaintiff contends, by Plaintiff's termination from Chevron or, as Plaintiff revealed in records (*infra*), their mother's heavy drug use during pregnancy or, as admitted to in discovery, her bipolar disorder resulting in their being placed in foster care and receiving social services. Chevron must be allowed to determine if the children's alleged problems existed prior to Plaintiff's employment at Chevron. Indeed, records provided by Plaintiff himself indicate the latter to be the case. Chevron is not required to simply take Plaintiff's word for it that the children declined in their education, behavior, and emotional conditions because of Chevron and only in the year following Plaintiff's termination. Comparative information regarding their conditions prior to Plaintiff's employment is critical for purposes of a causation analysis.

*Third* Chevron is confused regarding Plaintiff's contention that Chevron's subpoena (attached as Exhibit H to Plaintiff's letter) seeks Court adoption records. No subpoena has been issued to the Superior Court. The language of the at-issue subpoena makes no reference to the adoption proceedings records. It seeks records showing the services Plaintiff's children received for emotional, social, behavioral and developmental troubles.

Indeed, and *finally*, the sole reason Chevron is aware that the children in fact have preexisting issues is because Plaintiff disclosed records of the nature he now objects to, thereby waiving any right to privacy in such records. On January 1, 2008, Plaintiff filed with the Court and produced to Chevron a Declaration (Doc. #43) attaching the "private" Adoption Agreements and Adoption Orders from the Superior Court, and Dr. Lorin Frank's (Child Protective Services) five page report detailing the children's behaviors dating back to at least 2003. Dr. Frank's report reference the problems which Plaintiff now seeks to attribute to Chevron (it is for this reason that Chevron has now subpoenaed Dr. Frank's records, i.e., because Plaintiff has provided portions of her file already.) In addition, Plaintiff has produced, during discovery, the children's school records, testing and behavioral assessments conducted of the children and has not objected to the production of medical records referencing the children's mental/behavioral issues. In that regard, to the extent Plaintiff asserts a privacy right in such records, such a right has been waived not only as a result of his placing his children's conditions at issue, but also by his voluntary disclosure of records on these subjects. Having done so, Plaintiff cannot now pick and choose which records are subject to disclosure and which are not. Chevron is entitled to provide its expert psychologist records relating to the children's developmental, behavioral and emotional problems predating Plaintiff's termination, to show that their conditions were not caused by Chevron years later.

**Office of the Attorney General**:
Plaintiff's objection on the basis of "improper notice" fails for the reasons set forth above. The only other objection set forth in Plaintiff's letter brief is to Chevron's request that the Office of the Attorney General produce Plaintiff's employment records from the Public Utilities Commission ("PUC"), a state agency. Chevron is unsure of any basis for this objection by Plaintiff as Plaintiff has not specified any *legal* objection (i.e., relevance, overbreadth, privacy) in his letter brief and his contention is not a recognized or valid objection.

Chevron issued a subpoena to the PUC, Plaintiff's employer following his termination from Chevron. Plaintiff never objected to that subpoena or the production of records. In response, the PUC provided a "Declaration of Custodian of Records" stating that all of Plaintiff's records from the PUC were transferred, inter-agency, to his new employer, the California Department of Justice ("DOJ"). (*Exhibit C, attached hereto*.) Having received no

objection from Plaintiff to the prior PUC subpoena (the production date for those records was in July) and having been informed that those records are now in the possession and custody of the DOJ, Chevron issued a subpoena to the DOJ which included a request for the PUC records. Accordingly, Plaintiff's Motion to Quash the DOJ subpoena must also be denied.

**Attorneys' Fees As Sanctions:**
Plaintiff's objections and continued frivolous motions must be curtailed. It is clear, particularly with Plaintiff's psychological records and subpoena to the DOJ—and in light of his deposition admission that he is simply attempting to be difficult—that Plaintiff's conduct is in bad faith and without justification. Plaintiff has previously caused almost one-half dozen discovery motions to be considered by this Court, all of which have been denied. Chevron has not previously sought attorneys' fees, but must now do so given Plaintiff's undeterred tactics and vexatious conduct. As pertains to the matters raised in this letter, in reviewing Plaintiff's letter brief, researching the applicable authorities, reviewing prior meet and confer correspondence, and preparing this letter and exhibits, I have expended 5.3 hours at a rate of $1590, which Plaintiff should be ordered to pay to Chevron as sanctions.

Respectfully submitted,

Delia A. Isvoranu

**EXHIBIT A**

SAMUEL BERNARD JOHNSON III
4420 Abruzzi Circle
Stockton, California 95206
(209) 982-5904 – Telephone
blakviii@aol.com – Email

Plaintiff - *In Pro Se*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SAMUEL BERNARD JOHNSON III, <br><br> Plaintiff, <br><br> vs. <br><br> CHEVRON CORPORATION, a Delaware corporation, CHEVRON CORPORATION LONG-TERM DISABILITY PLAN ORGANIZATION, a Delaware corporation, CHEVRON ENVIRONMENTAL MANAGEMENT COMPANY, a California corporation, CATHERINE DREW, KATHRYN M. GALLACHER, ROBERT SCHMITT, HARALD SMEDAL, SUSAN J. SOLGER, SELLERS STOUGH, KRYSTAL TRAN, DEBBIE WONG, GARY A. YAMASHITA, and DOES 1-5, <br><br> Defendants | Case No.: C 07-05756 SI (JCS) <br><br> **PLAINTIFF'S SECOND SUPPLEMENTAL DISCLOSURES PURSUANT TO RULE 26(a)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE** |

Plaintiff Johnson reserves the right to supplement and/or amend this section of Plaintiff's Second Supplemental Disclosures as appropriate during the course of this action.

IV. **Amount In Controversy and Attorneys' Fees Pursuant to Rule 26(a)(1)(C)) Disclosures**

Plaintiff Johnson supplements this section of Plaintiff's Second Supplemental Disclosures as follows:

The below is a preliminary estimate of the amount in controversy and is subject to change during the course of this action as additional discovery becomes available to Plaintiff Johnson to prove the claims alleged in the original Complaint and the proposed Amended Complaint.

1. Expenses related to Plaintiff Johnson's unlawful termination of employment:

    i. Loss Wages (includes back pay)[1]:

    August 7, 2006 to May 7, 2007: $66,100.00 divided by twelve months = $5,508.33 times nine months = **$49,574.97**[2]

    May 7, 2007 to May 1, 2008[3] = **$21,520.00** (difference from $66,100.00 and what I made per year at CPUC).

    June 1, 2008 to July 1, 2008[4] = **$1,475.33** (difference between one months pay at Chevron and working for the CPUC ($5,508.33 - $4,033.00 = $1,475.33)

    August 1, 2008 to the present[5]: difference from what I was making at Chevron and the California Department of Justice ($5,508.33 - $4,617.00 = $891.33 per month). This figure will be calculated when a settlement has been reached between the parties in this action.

---

[1] Loss Wages will be calculated based off changes in merit increases and job employment (promotions) from May 7, 2007 to the present.
[2] This is considered to be back pay calculations.
[3] Salary was decreased to $3,715.00 per month from $5,508.33 per month (Chevron salary as of August 7, 2006).
[4] Received a merit increase from $3,715.00 per month to $4,033.00 per month.
[5] Received a salary increase due to promotion (job change). Salary changed from $4,033.00 per month to $4,617.00.

2

PLAINTIFF'S SECOND SUPPLEMENTAL DISCLOSURES, CASE NO. C 07-05756 SI (JCS)

    Total Loss Wages: $72,570.30[6]

  ii. Emotional Distress: $350,000.00

  iii. Physical Distress: $350,000.00

  iv. Mental Anguish: $350,000.00

  v. Pain and Suffering: $350,000.00

  vi. Putative Damages: 3,000,000.00

  vii. Loss of quality time with his two (2) minor children in child rearing, taking them on vacations, spending quality time with them, working with them on their developmental and education needs: $350,000.00.

  viii. Missed Time From Work Due VII (having to attend doctor's appointments, Individualized Education Plan meetings, etc.): $4,500.00

  ix. Front Pay[7]:

   August 6, 2006 to August 6, 2007: $66,100.00 to $70,462.60 = $4,362.60

   August 6, 2007 to August 6, 2008: $70,462.60 to $74,269.96 = $4,650.53

   August 6, 2008 to August 6, 2009: $74,269.96 to $79,171.77 = $4901.81

   August 6, 2009 to August 6, 2010: $79,171.77 to $84,397.10 = $5,225.33

   August 6, 2010 to August 6, 2011: $84,397.10 to $89,967.30 = $5,570.20

   August 6, 2011 to August 6, 2012: $89,967.30 to $95,905.19 = $5,937.89

  Total Front Pay: $30,648.36

Total Damages: $ 4,877,48.66[8]

2. Expenses related to Plaintiff Johnson's unlawful termination of employment as it relates to his two (2) minor children:[9]

  i. Emotional Distress: $400,000.00

---

[6] This total does not take into account the difference in salary that I was making at Chevron and what I'm now making at the California Department of Justice.

[7] Five years front pay (to be calculated based off of Plaintiff Johnson's last salary at time of termination with a 6.6% salary increase for each year from August 6, 2006 to August 6, 2012. (Chosen time period is an example).

[8] This total does not take into account difference in pay from what I was making at Chevron and what I'm now making at the California Department of Justice.

[9] These expenses are for two (2) children. When reviewing these numbers, divide them by two (2) in order to obtain the dollar figure for one (1) child.

3

PLAINTIFF'S SECOND SUPPLEMENTAL DISCLOSURES, CASE NO. C 07-05756 SI (JCS)

    ii.    Physical Distress:    $400,000.00

    iii.    Pain and Suffering:    $400,000.00

    iv.    Putative Damages:    $4,000,000.00

    v.    Substantial educational loses:    $400,000.00

    vi.    Substantial developmental losses:    $400,000.00

    vii.    Permanent decline in Plaintiff Johnson's two (2) minor children's future development: $750,000.00

    viii.    Loss of quality time with their father in taking them on vacations, spending quality time with their father, working with their father on their developmental and education needs and enjoying everyday life with their father, etc.: $750,000.00

**Total Damages: $7,400,000.00**

**Total Damages for Plaintiff Johnson and his two (2) minor children: $8,907,980.53**

3.    Other Damages/Costs: See below

    Cobra Payments:    $3,954.40

    From August to December 2006 = 5 x $389.64 = $1,948.20; and

    From January to May 2007 = 5 x $401.24 = $2,006.20

    Costs of Suit:    $4,500.00[10]

    Credit Cards:    $20,000.00[11]

    Saving:    $20,000.00

    Success Sharing:    2006, 2007, and 2008[12]
    Matching:    2006, 2007, and 2008[13]

    Total Amount in Controversy[14]:

---

[10] This amount is separate from what is listed in footnote #10.
[11] This dollar amount includes charges that were made to my personal credit cards from August 7, 2006, to the present to pay for items such as food, supplies to litigate this case, clothes for the children due to decrease in monthly salary, etc.
[12] Dollar amount to be provided by Chevron Corporation and Chevron Environmental Management Company
[13] Id.

4

PLAINTIFF'S SECOND SUPPLEMENTAL DISCLOSURES, CASE NO. C 07-05756 SI (JCS)

      a.    Section 1 = $4,877,48.66
      b.    Section 2 = $7,400,000.00
      c.    Section 3 = $28,474.40

          $ 12,286,193.06

IV.    **Insurance Pursuant To Rule 26(a)(1)(D) Disclosures**

Plaintiff Johnson reserves the right to supplement and/or amend this section of Plaintiff's Second Supplemental Disclosures as appropriate during the course of this action.

V.    **Conclusion**

Plaintiff's Johnson's Second Supplemental Disclosures are based on information reasonably available to Plaintiff Johnson at this time. Plaintiff Johnson reserves the right to identify additional individuals and/or witnesses, documents, tangible things and other information in this action, by supplementation of Plaintiff's Second Supplemental Disclosures, the formal discovery process, or in any other way. Plaintiff Johnson also reserves the right to make use of any party's witnesses or documents to prosecute this action. Plaintiff's Second Supplemental Disclosures are not intended, and should not be construed, as a waiver of any objection to the production, use or admission into evidence of any document or information that Plaintiff Johnson may be legally entitled to assert during the discovery or trial of this action.

Dated this 18[h] day of August 2008

SAMUEL BERNARD JOHNSON III

---

[14] This amount includes what is listed in items 1-3 above.

5

PLAINTIFF'S SECOND SUPPLEMENTAL DISCLOSURES, CASE NO. C 07-05756 SI (JCS)

**EXHIBIT B**

**Delia Isvoranu**

**From:** BlakVIII@aol.com
**Sent:** Friday, June 27, 2008 9:55 PM
**To:** Delia Isvoranu
**Subject:** Re: Case No. C 07-05756 SI Johnson v. Chevron Corporation

Delia,

I'm in agreement with the below. However, the emotional distress that I sustained at Chevron while employed there was caused due to the amount of stress that was put upon me regarding the EEO investigations, retaliation, harassment, hostile work environment, etc. Prior to any EEO that was conducted, I was able to completely perform my duties as a Procurement Specialist. With that said, please make the modifications to the subpoenas. Please also note that I plan on issuing several subpoenas on next week. These subpoenas will be issued on Susan J. Solger's prior employers as well as other entities. Please also note that none of these subpoenas will be issued on employees of Chevron. You of course will receive courtesy copies. Thanks and take care for now. Samuel.

In a message dated 6/27/2008 9:09:52 P.M. Pacific Daylight Time, disvoranu@filicebrown.com writes:

> Samuel,
> I can modify the medical subpoenas (ie arm, wrist, upper extremities) to encompass only the period of your employment) but the psychological subpoenas I will not modify. You have claimed emotional distress. The law is clear that you have put your emotional/mental state in issue and thus, we are entitled to find out if your emotional distress was caused by Chevron or whether you had a history of emotional distress/psyhological/mental conditions even before you became employed by Chevron. Here is an example: if someone is in a car accident and claims they hurt their back and sue the driver of the car, the driver is entitled to discover whether, in the years prior to the accident, the person already had injured his back previously in order to show that the back pain was a preexising injury, not caused by the car accident.
>
> So, while I will agree to limit the subpoenas regarding your writs, arms, upper extremities to only during your period of employment, I will not limit the psych subpoenas any further.
>
> Please note, the subpoenas for wrist/arm/upper extremity injury have not yet been served on Kaiser so I will modify those to the period of your employment before they are issued-no need for you to move to modify those.
>
> Best,
> Delia
>
> Delia
>
> -----Original Message-----
> From: BlakVIII@aol.com <BlakVIII@aol.com>
> To: Delia Isvoranu
> Sent: Fri Jun 27 20:02:39 2008
> Subject: Case No. C 07-05756 SI Johnson v. Chevron Corporation
>
> Delia,
>
> I'm in receipt of the 16 subpoenas that you issued on June 24, 2008. Please be advised that I'm filing a motion to modify the following subpoenas:

9/2/2008

1. Kaiser Hospital Hayward - Medical Records;
2. Kaiser Hospital Hayward - Psychological Records;
3. Kaiser Stockton - Psychological Records; and
4. Kaiser Stockton.

The records that you seek go beyond the time-frame of this litigation as you request records from January 2000 to present. You could have easily sought to limit the time-frame from the time that I was employed for Chevron. You also request that the records be produced by July 10, 2008. Given such, there can be no meet and confer on this matter unless you immediately withdraw these subpoenas. While this is a discovery dispute, I must file with the Court the proper motion for administrative relief to modify these subpoenas. Thanks and take care for now. Samuel.

---

Gas prices getting you down? Search AOL Autos for fuel-efficient used cars <http://autos.aol.com/used?ncid=aolaut00050000000007> .

************************************************************
IRS Circular 230 Disclosure: As required by U.S. Treasury Regulations governing tax practice, you are hereby advised that any written tax advice contained herein was not written or intended to be used (and cannot be used) by any taxpayer for the purpose of avoiding penalties that may be imposed under the U.S. Internal Revenue Code.
************************************************************

CONFIDENTIALITY NOTICE:
This electronic message may contain information that is confidential and/or legally privileged. Any use, review, dissemination, distribution, or copying of this transmission by anyone other than the intended recipient is strictly prohibited. If you have received this message in error, please immediately notify the sender and/or Filice Brown Eassa & McLeod LLP by telephone at (510) 444-3131 and delete the original message. Thank you.

Gas prices getting you down? Search AOL Autos for fuel-efficient used cars.

9/2/2008

**EXHIBIT C**

Revised

# DECLARATION OF CUSTODIAN OF RECORDS

(X) I HEREBY DECLARE under penalty of perjury that the following statements are true to the best of my knowledge and belief.

I am the duly authorized custodian of records of the below named and I certify that the accompanying records are true and complete copies of records maintained in the regular course and scope of business of my employer and were prepared by authorized personnel at or near the time of the acts, conditions or events which they intend to convey. As custodian, I testify to the records identity and method of preparation. The source of the information and method of preparation were such as to indicate their trustworthiness. If I were called as a witness in this matter, I could and would testify under oath to these facts. No documents, records or other things have been withheld except as noted below.

~~Certain records were omitted because~~ After our 7-2-08 response, we located 6 pages of responsive records, which we are sending to you.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

OR IN THE ALTERNATIVE:

(X) I HEREBY DECLARE under penalty of perjury that I have ALMOST NO RECORDS concerning SAMUEL BERNARD JOHNSON III.

Please explain if you have no records: Samuel Bernard Johnson III transferred his employment to the California Department of Justice. Mr. Johnson's personnel folder has been sent to his new employer. The 6 pages of records we are sending you are the only personnel records we have for Mr. Johnson.

( ) I have no X-RAYS or other diagnostic films.
( ) I have no BILLING RECORDS.

Records Subpoenaed From: PUBLIC UTILITIES COMMISSION
Case Name: SAMUEL BERNARD JOHNSON III vs. CHEVRON CORPORATION, et al.

Concerning: SAMUEL BERNARD JOHNSON III
DOB: 09/16/1968
ID No.: 557-33-40XX

Date: 7-9-08

Signature of Custodian

HOW ORIGINAL RECORDS WERE PREPARED:
( ) Handwritten notes
(X) Typed or Data Entered
( ) Transcribed
( ) Other: _____

Print Name: PAUL CLANON

Records were made during, or promptly after the act, condition or event reflected in such records.

---

FIRST REPROGRAPHICS
1517 West Beverly Blvd., Los Angeles, CA 90026
Phone: (877) 591-9979   Fax: (213) 482-1129

Order#:SF502313-11/CPROOF7